July 9, 1979

## 79-50  MEMORANDUM OPINION FOR THE SENIOR ASSOCIATE COUNSEL TO THE PRESIDENT

### Federal Home Loan Bank Board—Chairman— Vacancy—Reorganization Plan No. 3 of 1947 (5 U.S.C. App. 1), Reorganization Plan No. 6 of 1961 (5 U.S.C. App.)

This memorandum confirms the oral advice this Office has recently given you regarding the selection of a new Chairman of the Federal Home Loan Bank Board. The facts, as we understand them, can be briefly stated. At noon, on Saturday, June 30, 1979, Mr. McKinney resigned as a member and Chairman of the Board. It is anticipated that his successor will be named within 10 days. There are two other board members in active service on the Board at this time.

The first question is whether the President is required to name an Acting Chairman (either one of the two members or someone else) to serve until a successor is named. It is our opinion that the President is not required to do so and that the Board ought to be able to perform its essential functions without significant interruption until appointment of a new Chairman. Pursuant to Reorganization Plan No. 3 of 1947, the President is empowered to designate the Chairman. *See* § 2(b), *reprinted in* 5 U.S.C. App. at 734 (1976 ed.). The plan also authorizes the Chairman to designate a person to serve as Acting Chairman during the "absence or disability" of the Chairman. *Id.* There is no provision, however, that deals specifically with the selection of an Acting Chairman to serve during a vacancy. In the absence of any such specific provision, it should be assumed that the power to designate an Acting Chairman remains in the President, and, in fact, we have been informed by the General Counsel of the Federal Home Loan Bank Board that historically the President has named Acting Chairmen in cases in which vacancies have occurred.

In the absence of a designation by the President of an Acting Chairman, the question arises whether the Board may operate without a Chairman for a short period of time. (We have been advised that a period of

approximately 10 days is contemplated.) At least a partial answer is provided by Reorganization Plan No. 6 of 1961, which authorizes the Chairman to delegate any of his management and oversight functions to any appropriate officer. *See* § 2(b), *reprinted in* 5 U.S.C. App. at 783. Pursuant to that authority, on June 29, 1979, the Chairman delegated to the "Chief Administrative Officer of the Bank Board" all of his administrative functions, including each of the eight listed functions set forth in § 1 of the 1961 reorganization plan. This delegation should assure continuity during the short period in which there will not be a sitting Chairman.

Finally, a question has also been raised with respect to the ability of the Board to meet in special or emergency session in the absence of a Chairman. Section 1(8) of the plan gives to the Chairman the power to call special meetings. Under the June 29 delegation, that power has been transferred to the Board's chief administrative officer. In any event, it is our opinion that a special session could be called by the two sitting board members even in the absence of such a call. This opinion is based on § 1(8) of the 1961 plan which transfers to the Chairman "[t]he calling of the Board into special session * * * upon request of one or both of the other members of the Board." This subsection seems to render the Chairman's calling of special meetings merely ministerial when one or both of the board members request a meeting. Furthermore, the Presidential message accompanying the plan makes clear that the transfer of functions is intended to strengthen internal management of the Board and not to change the distribution of power within the Board. The message states:

> [n]othing in the plan impinges upon the ability of the members of the Board to act independently with respect to substantive matters that come before them for decision, or to participate in the shaping of Board policies. In carrying out his managerial functions, the Chairman will be governed by the policies of the Board and the determinations it is authorized to make. [5 U.S.C. App. at 784.]

The plan and the President's message lead us to conclude that the two remaining members of the Board have the authority to call a special meeting if such a meeting is necessary to the proper functioning of the Board.

It is also our view that if a meeting is held by the other two board members any action taken at such meeting may not properly be challenged on the ground that the calling of the meeting was not in conformance with the reorganization plan. It appears that, as a matter of corporate common law, business transacted at a meeting of a corporate board is valid so long as there is sufficient notice to the board members enabling them to attend, or if, in fact, all the members did attend. *See* 2 Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 404, 406, 411 (1969 ed.). We suspect that in the absence of specific statutory language to the contrary, a Government entity such as the Federal Home Loan Bank Board may rely on the common law rule. *Cf., FTC* v. *Flotill Products, Inc.,* 389 U.S. 1979 (1967). Of course, the notification and scheduling of any meeting would

still have to comply with other applicable provisions of law, including the provisions of the Sunshine Act, 5 U.S.C. §§ 552b.

Given these considerations, it is our opinion that the Board may function appropriately during this brief period without a sitting Chairman.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
